**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Lynn D. Tucker, Jr., et al. | : | **FIRST AMENDED COMPLAINT** |
| | : | |
| **Plaintiffs** | : | **Injunctive Relief Requested** |
| **v.** | : | |
| | : | **Jury Demand Endorsed Hereon** |
| City of Fairfield, Ohio, et al. | : | Civil Action No. C-1-03-607 |
| **Defendants** | : | Judge Sandra S. Beckwith |

## NATURE OF ACTION AND SUMMARY OF CLAIMS

1.      Plaintiffs bring this action seeking injunctive relief, declaratory judgment, and damages against Defendants pursuant to 42 U.S.C. § 1983 for Defendants' violations of Plaintiffs' rights to freedom of speech and expression under the United States Constitution; the right to gage in mutual aid and protection in protest of unfair labor policies of an employer under the labor laws of the United States; violations of Plaintiffs' rights to due process under the Ohio Constitution; and, violations of Plaintiffs' rights to due process and equal protection of the laws as established in the 14th Amendment to the Constitution, and as protected by the equal protection clause of Section 2, Article 1 of the Ohio Constitution.

2.      Defendants violated Plaintiffs' civil rights by unlawfully infringing upon their right to free speech by engaging in a policy and practice of threatening arrest and fines against Plaintiffs for their display and demonstration of a well-known and recognized symbol - the labor rat - in protest of the labor policies of Fairfield Ford upon a public right of way controlled by the City of Fairfield.  Defendants have further violated Plaintiffs' rights to due process, under Section 16, Article 1 of the Ohio Constitution by denying them certain liberty interests without notice and an

portunity to be heard, and equal protection under the laws of the United States, as guaranteed under the 14th Amendment and by Section 2, Article 1 of the Ohio Constitution by the selective, discriminatory and unlawful enforcement of the City's Code against Plaintiffs and their supporters in violation of their rights under the First Amendment and the labor laws of the United States.

## JURISDICTION AND VENUE

3.      This court has jurisdiction of Plaintiffs' claims in this action for violations of Constitutional rights and equal protection of the laws under 42 U.S.C. § 1983. This court has supplemental jurisdiction over Plaintiffs' claims for violations of their rights under the Ohio Constitution under 28 U.S.C. §1367.

4.      Venue is proper in this district as the violations of 42 U.S.C. § 1983, as well as of the Ohio Constitution, occurred within the city limits of Fairfield, Butler County, Ohio, within the Southern District of Ohio.

## PARTIES AND FACTUAL ALLEGATIONS

5.      Lynn D. Tucker, Jr. ("Tucker") is the General Vice President of the International Association of Machinists and Aerospace Workers, Eastern Regional Office, which is located at the address listed in the original case caption.

6.      International Association of Machinists and Aerospace Workers, District Lodge No. 34, ("Union") is a labor organization as defined by Section 2(5) of the National Labor Relation Act, 29 U.S.C. §152(5), and is located at the address listed in the caption.

7.      Lieutenant Kevin Haddix ("Haddix") is a police officer in the Fairfield City Police Department.

8.     Janette Matala is a "Zoning Inspector" employed by the City of Fairfield who both participated in the decision to violate Plaintiffs' rights, and engaged in distinct, egregious violations of Plaintiffs' rights.

9.     Defendant City of Fairfield, Ohio ("Fairfield") is a municipal corporation organized under the laws of the State of Ohio.  It is responsible for the policies, procedures and practices implemented through its various agencies, agents, departments and employees.  Fairfield employed each Defendant at all times relevant to this action.

## The Protests

10.     On February 26, 2003, members of IAM District 34, as well as other concerned citizens, participated in a protest ("February 26 Protest") against an employer known as Fairfield Ford, an organization engaged in the business of sale and repair of automobiles, engaged in interstate commerce, and an "employer" as defined in Section 2(2) of the National Labor Relations Act, 29 U.S.C. Section 152(2).  The protesters conducted their activities solely upon the public right-of-way adjacent to the car dealership's property on 5221 Dixie Highway in Fairfield, Ohio.

11.     The February 26 Protest was held in connection with an ongoing labor dispute between the Union and Fairfield Ford following the Union's winning a certification election on April 22, 2003.  Fairfield Ford has refused - and continues to refuse - to bargain with the Union, conduct which is unlawful under Section 8(a)(5) of the National Labor Relations Act, as amended ("NLRA").  See 29 U.S.C. § 158(a)(5).

12.     The February 26 Protest constituted protected, concerted activity within the meaning of Section 7 of the NLRA, and the protest was lawful in all respects.  See 29 U.S.C. § 157.

13.     As an integral part of this protest, the Union and the assembled protesters displayed a twelve foot tall, inflatable balloon in the shape of a rat (" the Rat Balloon").

14.     The rat as a symbol has a long history in labor disputes in this country.   Here, the Union and the assembled protesters displayed the Rat Balloon to demonstrate Fairfield Ford's anti-union and anti-worker animus to the public at large.  When the February 26 Protest ended, the Union deflated the Rat Balloon and removed it from the property.  At no time during the February 26 protest did any Defendant act to or threaten Plaintiffs with arrest or fines for the displaying of the Rat Balloon.

15.     The Union held a second demonstration at this same location on July 1, 2003 ("July 1 Protest"), again attended by union supporters and concerned citizens.  Like the earlier protest, the Union and the assembled protesters again displayed the Rat Balloon.   The demonstrators and the Union again conducted this protest upon the public right of way adjacent to the Fairfield Ford business location, within the City of Fairfield.

16.     During the July 1 Protest, Janette Matala, a zoning inspector for the City of Fairfield, approached the Union and the assembled protesters. Janette Matala informed the Union and the assembled protesters that the Rat Balloon could not be displayed on the right-of-way without the approval of the City's zoning officials because it was a "structure."

17.     At that time and on that date, the City of Fairfield's zoning ordinances defined "structure" as follows:

> . . . anything constructed, the use of which requires permanent location on the ground or attachment to something having a permanent location on the ground, and also includes anything constructed which is not enclosed within another structure and is placed in a stationary location. This definition does not include motor vehicles.  Fairfield Ord. § 1133.01 (78).

18.     The Rat Balloon did not then, nor does it now, meet the definition under the Fairfield Code as a "structure."   Rather, the Rat Balloon is simply a balloon that the Union and the assembled protesters inflated at that location, at that time, and which they could and did readily deflate.  It neither requires a "permanent location on the ground" nor an "attachment to something having a permanent location on the ground."  The display of the balloon has been and continues to be  temporary in all respects.

19.     The Union explained to Janette Matala that the Rat Balloon was not a "structure" and that they could lawfully display it on the right-of way.

20.     Janette Matala threatened the Union that if they did not remove the Rat Balloon, they would be arrested.

21.     Shortly after this threat was made, City of Fairfield police officers arrived.  Ultimately between 5 and 6 Fairfield police vehicles, representing between 5 and 12 police officers, appeared and remained on scene with their lights flashing.  They repeated the same threat of arrest for failure or refusal to remove the Rat Balloon made by Janette Matala.

22.     To avoid arrest, the Union complied with the police officers' demand.  The Rat Balloon was deflated and removed from the property.

23.     On July 22, legal counsel for the Union prepared and sent a letter to the City of Fairfield's Law Director, John H. Clemmons.

24.     Through this correspondence, the Union fully and properly alerted the City of Fairfield that the Union's use of the Rat Balloon constituted free speech under the U.S. Constitution and was further protected under Section 7 of the NLRA.

25.     Neither the Union nor their legal counsel received a response from the City of Fairfield to their July 22 letter.

26.     On July 31, Tucker and the Union and other concerned citizens returned to the same public right-of-way in front of Fairfield Ford to hold a third protest against the car dealership ("July 31 Protest"). Again, the Union and the assembled protesters displayed the Rat Balloon.

27.     When the July 31 Protest began, police officers from the City of Fairfield arrived in short order. Agents of Fairfield Ford contacted the Fairfield police and requested their intervention in an effort to squelch the civil rights and free speech protest of the Union and the assembled protesters.

28.     A discussion ensued between the police officers and Tucker about the propriety of the Union's display of the Rat Balloon. Tucker told the police officers that the display of the Rat Balloon was lawful.

29.     Tucker gave the police officers a copy of the July 22 letter that counsel for the Union had sent to the City of Fairfield's Law Director.

30.     The police officers at the scene contacted their superiors in the city's police department by police radio and/or cell phone.

31.     The police officers at the scene talked to Lieutenant Kevin Haddix ("Lieutenant Haddix") and other City of Fairfield police officials about what action, if any, to take.

32.     Lieutenant Haddix talked to one or more officials of the City of Fairfield, including Defendant Janette Matala, about whether the City would again order the Union to remove the Rat Balloon.

33.     After this discussion, the police officers at the scene advised Tucker that the Rat Balloon was a violation of a city ordinance.  They told him that if the Union did not immediately remove the Rat Balloon, they would issue him a citation for a fourth degree misdemeanor.

34.     The police officers also advised Tucker that if he did not remove the Rat Balloon after the citation was issued, he would be arrested.

35.     The Union did not immediately remove the Rat Balloon.   Officer R. Fleenor of the City of Fairfield issued Tucker a citation alleging violations of Section 905.03(c) of the Fairfield City Code.   The citation charged Tucker with having engaged in unlawful "construction on Streets/Alleys/Right of Way . . . Easements, or Public Grounds".   Section 905.03(c)  of the Fairfield City Code provided at that time:

> No person, firm or corporation shall construct or place or cause the construction or placement of any shrubbery, trees, parking facilities or any other structure or improvement, other than approved street trees and mailboxes, on any street, alley, public right of way, easement or public grounds without the written permission of the Public Works Director.

36.     When the Union and the assembled protestors continued to display the Rat Balloon in the face of the issued citation, Sergeant Overpeck, who had been present throughout, and acted as the City's spokesman in the matter, instructed Tucker again to remove the Rat Balloon or he would be arrested.

37.     In the face of this threat of arrest, the Union and the assembled protesters deflated the Rat Balloon.

38.     Shortly after the Union deflated the balloon, the police officers at the scene again approached Tucker.  These officers told him that, upon direction from Lieutenant Haddix, they were withdrawing their earlier threat of arrest.

39.     They did not withdraw the issuance of the citation. Instead, the police officers told Tucker that, while he would not be arrested, he would be given a citation every day that the Union thereafter displayed the Rat Balloon on the right-of-way.

40.     To stop the City of Fairfield's interference of federally protected speech and activity, Tucker and the Union initially brought this action against the City of Fairfield and the officials named in the original Complaint.

### Fairfield's Response

41.     On Saturday, September 13, 2003, Fairfield City Council met in special session to consider revisions to the Fairfield City Code concerning the definition of "structure". On that date the Fairfield City Council considered and enacted Ordinance No. 155-03, and specifically amended Section 905.03, Chapter 905, of Ordinance No. 166-84, Codified Ordinances of Fairfield, Ohio. The revised ordinance altered and amended the definition of "structure", and declared the term "structure" to mean:

> ...any object, whether permanent or temporary, including, but not limited to, non-public signs, that is constructed, erected or placed in a stationary location on the ground or is attached to or placed upon an object constructed, erected or placed in a stationary location on the ground...

42.     The legislative history to enactment of Revised Fairfield Code Section 905.03 declares no distinction to exist between "structures" attached to the ground, and objects placed in a stationary location even on a brief, immediate and temporary basis within the public right-of-way. The revised ordinance was enacted specifically and with the intent to include within the scope of the ordinance the inflatable rat balloon at issue in this litigation, citing the use of the Rat Balloon and this litigation in the legislative history of the proposed amendment.

43.     The Fairfield City Council enacted Ordinance No. 155-03 revising Code Section 905.03 as an "emergency measure", and without strict adherence to the notice and hearing requirements set forth in Fairfield Code Section 4.12.  Fairfield Code Section 4.12 requires the Clerk of Council to publish notice of proposed ordinances, including revisions and amendments, at least one time in a newspaper of circulation in the City at least seven days prior to council's action.  No notice of the proposed action concerning amendments to Code Section 905.03 was published in any newspaper of circulation at any time prior to enactment of Ordinance 155-03.

44.     Fairfield Code Section 4.06(B)(3) specifically excludes from enactment as an emergency measure "the enactment, amendment or repeal of any ordinance or resolution: establishing, amending, revising, changing or repealing....uses or regulations or codes regulating structural standards for the construction, alteration or improvement of buildings or other structures...".

45.     The Rat Balloon does not meet the definition under the attempted revised provisions of the Fairfield Code as a "structure."  The Rat Balloon remains a temporary, portable and visible symbol of Plaintiffs' and their supporters' labor protests, which is neither a "non-public sign" nor "constructed, erected or placed in a stationary location on the ground".

### Effect of The City's Actions on Plaintiffs

45.     These demonstrations occurred immediately adjacent to Ohio State Route 4 (also known as "Dixie Highway"), arguably the most traveled thoroughfare within the City of Fairfield, at times of the day commonly considered "rush hour", when large volumes of autos pass the location.  As a result, large numbers of citizens of Fairfield and surrounding communities utilizing Route 4/Dixie Highway on those dates during those periods witnessed the police effort to

ppress and prevent the exercise of First Amendment rights and labor protest engaged in by Plaintiffs on both July 1 and July 31, 2003. These citizens observed not a peaceful, properly conducted labor demonstration in protest of a labor law violator, as planned, organized and attempted by Plaintiffs, but rather what appeared to be police confronting a union engaged in unlawful conduct.

46.    Since the intervention of the Fairfield City police against Plaintiffs as described here, and the violations of Plaintiffs' constitutional rights and rights under the national labor laws, efforts by the Machinists to successfully organize employees of other automobile dealership technicians and mechanics in the Fairfield vicinity, and in the Greater Cincinnati area, have suffered significant reversals.

47.    Since the intervention of the Fairfield City police against Plaintiffs as described here, and the violations of Plaintiffs' constitutional rights and rights under the national labor laws, efforts by the Machinists to successfully conclude negotiations for first labor contracts on behalf of Machinist-represented employees of other automobile dealership technicians and mechanics have also suffered significant reversals.

48.    Plaintiff Tucker has been subjected to public humiliation, ridicule, opprobrium and harm and damage to his person and his reputation as the result of the issuance of the citation for violation of the City Ordinance to him on July 31, 2003 by a uniformed Fairfield police officer in full view of the public eye, and by the subsequent publication of a photograph of that event in the local newspaper on August 1, 2003.

## FIRST CLAIM FOR RELIEF
(Damages under Section 1983 against the City of Fairfield)

49.    Plaintiffs incorporate the allegations of Paragraphs 1 through 48, set forth above, as if fully restated herein.

50.    The Machinists' protests on February 26, July 1 and July 31, 2003, as described herein, were lawful and fully protected under Section 7 of the NLRA, and under the First Amendment to the United States Constitution.

51.    In the context of these protests, the Machinists' display of the Rat Balloon on the public right-of way was lawfully protected free speech under the First Amendment of the United States Constitution.  Plaintiffs' conduct, in protest of the unfair labor policies of Fairfield Ford, and in particular their repeated display of the labor rat as a symbol of that protest, conducted upon a public right of way within the City of Fairfield, constituted constitutionally protected exercises of their rights to freedom of speech and assembly.

52.    The display of the Rat Balloon further did not violate any applicable ordinance of the City of Fairfield, including Section 905.03(C) either in its original form, or as revised on September 13, 2003.  As explained above, the Rat Balloon is not a "structure" as defined in the City Code.

53.    Acting on behalf of the City of Fairfield, the various city officials named in this First Amended Complaint unlawfully threatened Plaintiffs with arrest for engaging in this lawfully protected symbolic speech.

54.    Acting on behalf of the City of Fairfield, the various city officials named above unlawfully issued a citation and subjected Plaintiff Tucker to criminal fines and threatened further criminal fines against Tucker and/or the Machinists for engaging in lawfully protected speech and protests.

55.     This unlawful interference with Plaintiffs' exercise of their federally protected rights occurred in accordance with a policy and/or custom of the City of Fairfield.

56.     Plaintiffs seek recovery of damages against the City of Fairfield in an amount to be determined upon trial of this action to a jury.

## SECOND CLAIM FOR RELIEF
(Violations of Fairfield City Code and Due Process Under the Ohio Constitution)

57.     Ordinance 155-03 violates Section 4.06 of the Fairfield City Code by enacting revisions to the definition of "structure" as an emergency ordinance.

58.     The City's enactment of Ordinance 155-03 as an emergency ordinance in violation of Section 4.06, in turn violated Code Section 4.12, which requires advance notice of consideration of amendments and revisions to code provisions at least 7 days in advance of Council action on the matter.

59.     Enactment of Ordinance 155-03 as described deprived Plaintiffs of their rights to due process as guaranteed by the Ohio Constitution, Section 16, Article I.   The state action at issue directly and adversely affects Plaintiffs' constitutionally protected liberty interest in the exercise of their rights to freedom of speech, and to notice and hearing as to changes in laws in which they have a direct and tangible interest.

60.     Plaintiffs have been irreparably harmed and damaged by the City's violation of its own City Code, and the resulting violations of Plaintiffs' due process rights under Section 2, Article 16 of the Ohio Constitution, in an amount to be determined upon trial of these claims to a jury.

## THIRD CLAIM FOR RELIEF
(Violations of Equal Protection Under 14th Amendment and Ohio Constitution)

61.    Fairfield has enforced and applied its ordinances with respect to regulation and governance of the public right-of-way against Plaintiffs in a selective, discriminatory and unlawful manner.

62.    Fairfield has failed to grant Plaintiffs the same rights of due process and hearing with respect to alleged violations of the City's right-of-way ordinances as given to other persons, including clear and known violators.

63.    Fairfield has selectively and unlawfully granted businesses utilizing the public right-of-way for purposes of commercial speech greater rights and consideration than has been granted to Plaintiffs in the attempted exercise of their rights to free speech and labor protest under the First Amendment.

64.    Fairfield's conduct as described violates Plaintiffs' rights to due process and equal protection of the laws under the 14th Amendment to the Constitution; Section 2, Article 1 of the Ohio Constitution, and; Section 16, Article 1 of the Ohio Constitution.

65.    Plaintiffs and their supporters have been irreparably harmed and damaged by Fairfield's violation of Plaintiffs' rights to equal protection and due process of law, in an amount to be determined upon trial of these claims to a jury.

## FOURTH CLAIM FOR RELIEF
(Injunctive Relief against the City of Fairfield)

66.     Plaintiffs incorporate the allegations of Paragraphs 1 through 65, set forth above, as if fully restated herein.

67.     Plaintiffs seek immediate injunctive relief to prevent Defendants from engaging in further illegal conduct as set forth in this First Amended Complaint.

68.     Injunctive relief is necessary to avoid irreparable injury to Plaintiffs in the exercise of their rights under the U.S. Constitution, the federal labor laws, and the Ohio Constitution.

69.     Plaintiffs specifically seek an order from the Court directing the City of Fairfield to immediately refrain from its unlawful interference of the Plaintiffs' right to engage in lawfully protected speech and protest such as the display upon the public right of way of the Rat Balloon.

## FIFTH CLAIM FOR RELIEF
(Damages against Defendant Haddix)

70.     Plaintiffs incorporate the allegations of Paragraphs 1 through 65, set forth above, as if fully restated herein.

71.     Defendant Haddix participated in and issued the decision to unlawfully interfere with the Plaintiffs' exercise of their rights protected under the U.S. Constitution, federal labor laws, and the Ohio Constitution.

72.     Plaintiffs seek recovery of damages against Defendant Haddix in an amount to be determined upon trial of this matter to a jury.

## SIXTH CLAIM FOR RELIEF
(Damages against Janette Matala )

73.     Plaintiffs incorporate the allegations of Paragraphs 1 through 65, set forth above, as if fully restated herein.

74.     Janette Matala participated in the decision to unlawfully interfere with the Plaintiffs' exercise of their rights protected under the U.S. Constitution, federal labor law, and the Ohio Constitution, on both July 1 and July 31, 2003.

75.     Plaintiffs seek recovery of damages against Janette Matala in an amount to be determined upon trial of this action to a jury.

**WHEREFORE**, Plaintiffs pray the following relief be awarded by the Court:

A.      Issuance of a Preliminary Injunction directing the City of Fairfield to immediately refrain from further interference with the Plaintiffs' lawful display of the Rat Balloon;

B.      A declaration that Plaintiffs' display of the Rat Balloon is protected speech under the U.S. CONST. amend. I and Section 7 of  the National Labor Relations Act, 29 U.S.C. § 157;

C.      A declaration that Defendants have violated its own City Code, and Plaintiffs' rights to due process under Section 16, Article 1 of the Ohio constitution by enactment of Ordinance 155-03 as an emergency ordinance;

D.      A declaration that Defendants have violated Plaintiffs' rights to due process and equal protection of the laws under both the 14th Amendment and Section 2, Article 1 of the Ohio Constitution;

E.    Damages in an amount as may be determined upon trial of this action to a jury

      against Defendants;

F.    An award of all costs and attorney's fees incurred in the investigation, initiation

      and prosecution of the claims in this action; and

G.    Such other and further relief as the Court may deem equitable and just under the

      circumstances.

Dated: October 2, 2003


David M. Cook      (Ohio Bar # 0023469)
Stephen A. Simon   (Ohio Bar #0068268)
Robert E. Rickey   (Ohio Bar #0075197)
DAVID M. COOK, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax:    (513) 721-1178
e-mail: dcook@dmcllc.com
Trial Attorneys for Plaintiffs

and

Allison Beck
Christopher T. Corson
International Association of Machinists and
Aerospace Workers
9000 Machinists Place
Upper Marlboro, Maryland 20772
Phone: (301) 967-4510
Fax:    (301) 967-4594
Co-counsel for Plaintiffs

## JURY DEMAND

Plaintiffs demand trial by jury of all claims presented in this action.

David M. Cook
_____
Attorney For Plaintiffs

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing "First Amended Complaint" has been served by regular United States mail, first class postage affixed, this 2nd day of October 2003 on John H. Clemmons and Thomas A. Dierling, Milliken & Fitton Law Firm, 530 Wessel Drive, Suite 2A, Fairfield, Ohio 45014, attorneys for Defendants.

David M. Cook
Attorney for Plaintiffs