UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LYNN D. TUCKER, JR., et al., | : | CASE NO. 1:03-cv-00607 |
| Plaintiffs, | : | JUDGE BECKWITH |
| -vs- | : | |
| CITY OF FAIRFIELD, OHIO, et al., | : | |
| Defendants. | : | |

___

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
___

Come now Defendants, the City of Fairfield, Ohio, Lieutenant Kevin Haddix, and Janette Matala, who, pursuant to Fed. R. Civ. Proc. 56, move this Court for partial summary judgment in their favor as there is no genuine issue as to any material fact. Defendants request judgment on Plaintiffs' Second Claim for Relief- Violation of Due Process under the Ohio Constitution and Violations of Fairfield City Code, Plaintiffs' Third Claim for Relief - Violations of Equal Protection under the 14th Amendment and Ohio Constitution, and Plaintiffs' Fifth and Sixth Claims for Relief - individual liability against Lieutenant Haddix and Janette Matala. This Motion is supported by the attached Memorandum, the deposition excerpts of Lynn Tucker, Lieutenant Kevin Haddix, Janette Matala, John Clemmons, Steve Graham, Paul Shemanski, Jim Tyler, and David Porter, and the direct testimony of Janette Matala from this Court's hearing on the Temporary Restraining Order.

Respectfully submitted,

/s/ Wilson G. Weisenfelder, Jr.
Wilson G. Weisenfelder, Jr. (0030179)
James J. Englert (0051217)
Laura I. Hillerich (0075151)
RENDIGS, FRY, KIELY & DENNIS, L.L.P.
One West Fourth Street, Suite 900
Cincinnati, OH 45202-3688
(513) 381-9200
(513) 381-9206 - Facsimile
E-mail: wgw@rendigs.com
       jje@rendigs.com
       lhillerich@rendigs.com

Trial Attorney for Defendants

and

John H. Clemmons (0008870)
Law Director - The City of Fairfield
Thomas A. Dierling (0074438)
530 Wessel Drive, Suite 2A
Fairfield, OH 45014
(513) 863-6700
(513) 863-0031
Co-Counsel for Defendants

## MEMORANDUM

## I. INTRODUCTION ("TUCKER")

Plaintiff, Lynn Tucker ("Tucker"), individually and as a representative of the International Association of Machinists and Aerospace Workers ('Union"), filed this lawsuit against the City of Fairfield ("City") seeking a preliminary injunction and damages based on the City's alleged infringement of its First Amendment Rights. Earlier in this litigation, the Union sought, and this Court granted, a Temporary Restraining Order and a preliminary

injunction enjoining the City from prohibiting the Union from erecting a 12-foot inflatable rat ("Rat Balloon") during labor protests on the public right-of-way adjacent to Fairfield Ford located at 5221 Dixie Highway in Fairfield, Ohio. The Union now seeks money damages against the City, Lieutenant Kevin Haddix, and Janette Matala for warning of arrests of the Union members during protests and issuing a citation to Tucker for the erection of the Rat Balloon. The citation alleged a violation of Section 905.03(c) of the Fairfield City Code.

The Union has asserted various claims against the City. Specifically, Plaintiffs allege the City violated its equal protection rights under the Fourteenth Amendment to the United States Constitution and the Ohio Constitution. According to the Union, the City selectively enforced the ordinance against the Union, but not against other organizations or businesses in the area. In addition, the Union also seeks individual liability against Lieutenant Haddix, ("Haddix") who instructed a Fairfield police officer to issue the citation to Tucker, and Janette Matala ("Matala"), Fairfield's Zoning Director. The Union also alleges the City violated its procedural due process rights when the City amended the subject ordinance, after Tucker's citation, without prior notice to Plaintiffs.

Defendants' Motion requests this Court to grant summary judgment on the claims of individual liability, the selective enforcement claim, and the alleged due process violation. Both Haddix and Matala are entitled to qualified immunity. The Union cannot state a due process claim, since the ordinance was amended following the issuance of the citation to Tucker and **after** this Court granted a Temporary Restraining Order prohibiting the City from interfering with the Union's use of the Rat Balloon at protests. Finally, Matala's testimony dispels any notion of selective enforcement, particularly in light of the fact the Union has failed to offer any evidence of this claim.

## II. STATEMENT OF THE CASE

The Court is well aware of the facts of this case. For background purposes, however, the pertinent facts relevant to this Motion will be revisited.

This lawsuit involves three separate occasions during which the Union protested against Fairfield Ford. During each protest, February 26, 2003, July 1, 2003, and July 31, 2003,[1] the Union displayed the Rat Balloon on the public right-of-way adjacent to Fairfield Ford located at 5221 Dixie Highway in Fairfield, Ohio.[2]

During the July 1, 2003 protest, someone from Fairfield Ford called Matala to inform her about the Rat Balloon, claiming that it was in the City's right-of-way, obstructing traffic on Route 4.[3] Matala arrived at the protest, and, after she was unable to determine who erected the Rat Balloon, contacted the City police.[4] Matala did not call the police at the suggestion of Fairfield Ford.[5] She informed the Union the Rat Balloon could not be on the right-of-way because it constituted a structure under Fairfield Ord. §905.03(c).[6] When the Union disputed the Rat Balloon was a structure, Matala warned the Union representatives

---

[1] See Amended Complaint, ¶¶ 10, 15, 26.

[2] See *id*., ¶¶ 10, 13, 15, 26.

[3] Matala Deposition, p. 14.

[4] Matala Deposition, p. 16.

[5] Matala Deposition, p. 21.

[6] See *id*., ¶¶ 16-17. Note, Plaintiffs' Amended Complaint incorrectly references 1133.01(78).

they would be arrested if they did not remove the structure.[7] The City police arrived and repeated the same warning. The Union complied and deflated the Rat Balloon.[8]

Matala has no authority to issue a summons for a violation of 905.03(c).[9] She would have to petition the Court for a summons after filing a Complaint. And before she issues a Complaint, she has to have approval from the City Law Director, John Clemmons.[10]

On July 22, 2003, counsel for the Union sent a letter to the City, reflecting his belief the Union's use of the Rat Balloon was protected by free speech and labor laws.[11] During the Union's third protest, on July 31, 2003, the Union again displayed the Rat Balloon. The City police officers arrived and discussed the Rat Balloon with Tucker.[12] When Tucker showed the officers the July 22 letter, the officers called their supervisor, Haddix.[13]

Haddix instructed Sergeant Overpeck to issue a summons to Tucker for a violation of Section 905.03(c).[14] At the time he gave that instruction, Haddix was not aware of the July 22, 2003 letter. In fact, he was not aware of the existence of that letter until after Overpeck issued the citation and cleared the scene.[15]

---

[7] See *id.*, ¶¶ 19-20.

[8] See *id.*, ¶¶ 21-22.

[9] Clemmons Deposition, p. 14.

[10] Clemmons Deposition, p. 14.

[11] See *id.*, ¶ 24.

[12] See *id.*, ¶¶ 29-30.

[13] See *id.*, ¶¶ 31-33.

[14] Haddix Deposition, pp. 19-20.

[15] Haddix Deposition, p. 13. "I became aware of that on the 31st when Sergeant Overpeck cleared the scene and actually brought me a copy of the letter."

After speaking with Haddix, the officers informed Tucker that the Rat Balloon violated a City ordinance, and advised him if he did not remove the Rat Balloon, he would be arrested.[16] When the Union did not immediately remove the Rat Balloon, an officer issued a citation to Tucker for violation of Section 905.03(c). The citation charged him with having engaged in unlawful "construction on Streets/Alley Ways/Right of Way."[17] After another officer warned the remaining Union members with arrest if they continued to display the Rat Balloon, Union members deflated it.[18] However, shortly after that, the police officers at the scene informed Tucker the City was withdrawing any warning of arrest.[19] The Union then re-inflated the Rat Balloon for the duration of the demonstration.[20] The City never again warned the Union about arrest for their use of the Rat Balloon. In fact, after the July 31, 2003 protest, the Union used the Rat Balloon at the same location approximately 8-10 times without incident.[21]

This Court issued a Temporary Restraining Order on August 29, 2003, enjoining the City from interfering with the Union's right to erect the Rat Balloon. Subsequently, the City

---

[16] See *id.*, ¶¶ 33-34.

[17] See *id.*, ¶ 35.

[18] See *id.*, ¶ 36-37.

[19] See *id.*, ¶ 38.

[20] Graham Deposition, p. 24; Shemanski Deposition, p. 40.

[21] Tucker Deposition, p. 136.

amended the ordinance. The City's usual process for amending an ordinance is to hold three meetings where the ordinance is discussed.[22] After the third meeting, the ordinance can be adopted. Unless it contains an emergency provision, the amendments take effect 30 days following passage.[23] However, the amendment can become effective immediately if the City inserts emergency language.[24]

The Union members believe the City targeted it, as opposed to other businesses or organizations, for enforcement of Section 905.03(c). They base this belief on their observation of other signs in the right-of-way, which they contend were not subject to restrictions.[25] They also base this on their contention that in the past, the City would take several months to remove unlawful signs from the right-of-way.[26] Many Union members believe Fairfield Ford influenced the City's decision to issue a citation.[27]

To enforce Section 905.03(c), the City's procedure is to first identify the owner of the sign, and then advise the owner the sign violates a City ordinance.[28] The City first attempts a verbal communication, then a certified letter, and then ultimately issues a

---

[22] Clemmons Deposition, p. 36.

[23] Clemmons Deposition, p. 36.

[24] Clemmons Deposition, p. 36.

[25] Tucker Deposition, p. 113; Tyler Deposition, pp. 28-30.

[26] Tucker Deposition, p. 114.

[27] Tucker Deposition, p. 116; Porter Deposition, pp. 34-35; Graham Deposition, p. 40; Shemanski Deposition, pp. 44-45.

[28] Matala Deposition, p. 8.

summons for a violation.[29] Prior to July 31, 2003, the City had issued summons to businesses for signage or zoning violations.[30] The majority of times Matala had observed a sign or other object in the public-right-of-way, she took steps to determine who placed the obstruction in the right-of-way.[31] She then attempted to contact the business owner via telephone, and identify the violator.[32] Further, Matala had removed signs for violations.[33]

In this case, Matala was unable to make phone contacts or send correspondence because no one at the protest would tell her who erected the Rat Balloon. Thus, since she received no cooperation from the Union members as to who was responsible for the Rat, she contacted the police to assist her in resolving that issue.[34] She called the police because the Union members specifically told her they were not going to cooperate.[35] In the past, when she would contact business owners, they were willing to work with her to comply with the City's ordinance.[36] Thus, unlike the situation at hand, in the past she had

---

[29] Matala Deposition, pp. 8-10.

[30] Matala Deposition, p. 12.

[31] Transcript of Proceedings (Matala Direct), p. 195.

[32] Transcript of Proceedings (Matala Direct), p. 196.

[33] Transcript of Proceedings (Matala Direct), p. 196.

[34] Transcript of Proceedings (Matala Direct), p. 196.

[35] Transcript of Proceedings (Matala Cross), p. 211.

[36] Transcript of Proceedings (Matala Cross), p. 213.

not had to contact the police since the infringing party was cooperative. Further, the City has used the police to enforce a zoning ordinance for commercial signs.[37]

Despite Plaintiff's characterization as such, Section 905.03(c) is not a zoning ordinance, but instead a general police regulation ordinance regarding the police powers of the City.[38] In contrast, a zoning ordinance pertains to the regulation of private property.[39]

Based on these facts, the Union asserted the following claims:

1. Damages under Section 1983 against the City of Fairfield;

2. Violations of the Fairfield City Code and under the Ohio Constitution;

3. Equal Protection under the 14th Amendment to the United States Constitution and the Ohio Constitution;

4. Injunctive Relief against the City of Fairfield;

5. Damages individually against Defendant Haddix; and

6. Damages individually against Defendant Matala.

This Motion seeks summary judgment on the selective enforcement claim. Matala's testimony concerning enforcement procedures demonstrate this claim has no merit. In addition, the Union has failed to offer any evidence the City selectively enforced the ordinance against it. Defendants also seek summary judgment on the procedural due process claims, because the amendment to the ordinance occurred after this Court issued a temporary restraining order. In addition, Plaintiff's allegations concerning procedural due

---

[37] Transcript of Proceedings (Matala Cross), p. 225.

[38] Clemmons Deposition, p. 11.

[39] Clemmons Deposition, p. 11.

process are misplaced, since they have mischaracterized the procedure the City employs to amend an ordinance. Further, the City cited Tucker with the previous version of the ordinance. Finally, this Motion also seeks summary judgment on the individual claims against Haddix and Matala, since they are entitled to qualified immunity.

## III. ARGUMENT.

### A. Defendant Haddix Is Entitled to Qualified Immunity.

Government officials acting within the scope of their authority are generally immune from civil liability.[40] To determine whether a law enforcement officer is entitled to qualified immunity, the Court employs a two step analysis: (1) was a constitutional right violated; and (2) whether that right was clearly established.[41] Qualified immunity is appropriate when either the right allegedly violated was not at the time "clearly established" or when a reasonable person in the defendant's position would have failed to appreciate a violation of a "clearly established right" by his conduct.[42] The Court conducts an objective analysis of reasonableness, determining whether a reasonable official in the defendant's position would have believed that his conduct was lawful, in light of clearly established law and the information he possessed.[43] A government official is entitled to qualified immunity even if he is mistaken, as long as his conduct is not unreasonable.[44]

---

[40] *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

[41] *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir., 2005).

[42] *Pray v. City of Sandusky*, 49 F.3d 1154, 1157-58 (6th Cir., 1995).

[43] See *id.*

[44] See *id.*

Thus, to overcome qualified immunity, a plaintiff must demonstrate that at the time of the alleged violation, the right in question was so clearly established a reasonable official would have understood that the alleged conduct violated that right.[45] "To be 'clearly established,' a right must be so sufficiently clear a reasonable official would understand what he is doing violates that right. A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point."[46]

In this case, the Union must demonstrate it would be clear to a reasonable police officer in Haddix's position his conduct of ordering another officer to issue a citation for a violation of City ordinance was unlawful.[47] The simple fact is Lt. Haddix's actions were not objectively unreasonable. At the time he provided his instruction to issue the citation, Haddix was unaware the Union contested the application of the Ordinance to the Rat Balloon, as stated in its July 22 letter to the City. When this Court granted Plaintiffs' preliminary injunction, it did not determine the ordinance, as written, was invalid. Rather, the Court took issue with its application of the statute to the Union erecting the Rat Balloon under the circumstances which existed in this particular case. At the time Haddix issued

---

[45] See *Anderson v. Creighton* (1987), 483 U.S. 635, 639-40, 107 S.Ct. 3034, 97 L.Ed.2d 523.

[46] *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir., 2002).

[47] *Miller v. Administrative Office of the Courts*, 448 F.3d 887, 896 (6th Cir., 2006).

the citation, there was simply nothing "patently and fragrantly unconstitutional" about the ordinance at issue.[48]

Further, Plaintiffs cannot establish the application of the ordinance was unconstitutional at the time of the citation. To succeed on their claims against Haddix, the Union must demonstrate that its right to erect a 12-foot rat balloon on a public right-of-way was clearly established when Haddix gave his instruction. In its decision ordering a preliminary injunction, this Court did not cite any authority from the United States Supreme Court, Sixth Circuit Court, or Ohio District Court on point with this case.

This Court discussed one decision, from another district, which it found similar to the case at hand. In *One World One Family Now, Inc. v. State of Nevada*,[49] the plaintiffs desired to set up tables, chairs, umbrellas boxes and signs on a public sidewalk to distribute religious and political messages. The Department of Transportation determined that setting up tables and other paraphernalia was an encroachment in violation of its regulations. The Court determined that banning the tables from the sidewalk violated plaintiff's First Amendment rights because the tables facilitated the dissemination of plaintiffs' message and the tables were **relatively small and portable**. That case did not involve a large inflatable device similar to the Rat Balloon at issue here.

And even now, after the Court of Appeals for the Sixth Circuit affirmed this Court's decision granting a preliminary injunction, the limits of constitutional protection that this

---

[48] See *Prose v. Wendover* (6th Cir., 2004), 96 Fed. Appx. 358 (court granting qualified immunity to a police officer for enforcing a presumptively valid ordinance.)

[49] 860 F.Supp. 1457 (D. Nev. 1994).

Court granted to the Union's are dependent on the particular facts and circumstances of the case at hand. Indeed, in her dissent in *Tucker v. City of Fairfield*,[50] Judge Kennedy, recognized the difficulties facing the City in light of the decision:

> I believe that investigating the nature of the structure, beyond what little investigation is required to determine whether an object is a structure, is an incorrect mode of analysis that has the effect of saddling the City with an impossible legislative task, or requiring courts to reach necessarily arbitrary results. Why does a structure whose nature only requires it to be present for a limited time not undermine the City's objective of keeping the right-of-way clear when a more permanent structure does not? The district court indicates that if the Union wished to leave the inflatable rat in the right of way constantly, it would reach a different result. [citations omitted] What exactly constitutes "an extended period of time" that would require resolving this dispute in the City's favor. Four hours? Ten? Twenty Four? Alternatively, what public employee is to be given the discretion to determine that amount of time, and how is that discretion to be limited to that time, place and manner neutrality can be maintained?[51]

Clearly, if the Courts cannot reach a clear consensus on what is an appropriate limitation on the Union's First Amendment Right to erect the a portable device in a public right-of-way, whether or not a structure, how is a reasonable police officer to know whether he is violating a constitutional right when issuing a citation based upon a facially constitutional ordinance related to structures in the public right-of-way? Clearly, Haddix is entitled to qualified immunity in this instance.

---

[50] 398 F.3d 457 (6th Cir., 2005).

[51] *Id*. at 467.

### B. Matala is Entitled to Qualified Immunity.

The same rationale is applicable to Matala. As an initial matter, the Union has failed to demonstrate how Matala violated its constitutional rights. Matala was not even present when the City issued a citation to Tucker. Matala's actions in this case consisted of simply contacting the police after arriving at the second protest, and informing the Union protesters they could be arrested if they did not remove the Rat Balloon. At the time of the second protest, she had no reason to believe that enforcement of the subject ordinance would violate the Union's First Amendment Rights.

Further, Matala was not personally involved in the alleged violation. Indeed, she lacked any authority to issue a summons to Tucker at the July 31, 2003 protest. To succeed on a Section 1983 claim, a plaintiff must show personal involvement in the alleged violation.[52] Absent any personal involvement, Matala cannot be held individually liable to Plaintiffs. Plaintiffs' claims against her must be dismissed.

### C. The Union Has Failed to Offer Any Evidence to Support its Selective Enforcement Claim.

The Sixth Circuit employs a three part test to determine whether the government has engaged in selective enforcement in violation of the equal protection clause. First, an official must single out a person belonging to an identifiable group for prosecution, such as a group exercising constitutional rights, even though the official decided not to prosecute persons not belonging to that group in similar circumstances. Second, the official must initiate the prosecution with a discriminatory purpose. Third, the prosecution

---

[52] *Copelan v. Machulis*, 57 F.3d 476, 481(6th Cir., 1995).

must have a discriminatory effect on the group to which the defendant belongs.[53] Courts impose a strong presumption that government actors have properly discharged their official duties, and to overcome that presumption the plaintiff must present clear evidence to the contrary.[54]

In this case, Matala's testimony demonstrates the City did not selectively enforce the ordinance. Rather, Matala called the authorities because the Union failed to respond to her inquiries. In previous cases of ordinance violations, Matala took efforts to communicate with the sign owners to have the sign removed. In this case, Matala attempted to communicate with the Union members when she arrived at the second protest on July 1. But when no one responded to her inquiries about who erected the Rat Balloon, she called the police. After refusing to provide the information she requested to discuss the potential violations, the Union cannot now be heard to complain that Matala unfairly targeted them for enforcement.

Further, the Union has failed to offer any evidence to rebut the presumption the City acted properly in issuing the citation against Tucker. The Union believes the City targeted it for enforcement of the ordinance. Yet, the only evidence to support this belief are the Union's members observations of other signs in the right-of-way. Matala explained this case was different from past cases, because in the past, she had to first determine who had erected the infringing sign. She would attempt to contact a business owner by telephone and by mail. In this case, the Union refused to provide any information about

---

[53] *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir., 1991).

[54] *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir., 1997).

who had erected the Rat Balloon. Thus, the circumstances were different in this case than in past cases. Therefore, past cases where Matala employed different procedures cannot be used to established a selective enforcement claim in this case.

Absent any specific evidence of the circumstances of how those signs were erected, the Union cannot demonstrate the City deliberately chose to prosecute the Union and no other organizations or businesses. The Union's claim that the City discriminated against it does not make that fact true. Absent any evidence of selective enforcement, the Union's claim cannot stand.

### D. The City Did Not Violate its Own Code or Procedural Due Process When Amending its Statute.

Plaintiffs claim the City enacted Ordinance 155-03, which amended 905.03(c) in violation of Code Section 4.12, which requires notice of consideration fo amendments prior to Council's acting on the amendments.[55] Plaintiffs claim that this action violated their rights to due process under the Ohio Constitution.[56] But Plaintiffs' claims for damages is based on City's activity in **July, 2003**, more than one month before the City amended the ordinance on September 13, 2003.

To establish a procedural due process violation, the plaintiff must show the conduct complained of **deprived** the plaintiff of a liberty or property interest without adequate procedural safeguards.[57] In this case, amending the ordinance at issue had no effect on

---

[55] See Amended Complaint, ¶ 58.

[56] See Amended Complaint, ¶ 59.

[57] *Roe v. Franklin Cty*. (1996), 109 Ohio App.3d 772, 673 N.E.2d 172; *Brick v. Cleveland* (1997)124 Ohio App.3d 271, 281, 706 N.E.2d 10.

the Union, harmful or otherwise. At the July 31 protest, the City cited Tucker under the prior version of the ordinance. Further, after July 31, no City official ever threatened the Union with a citation or arrest related to the Rat Balloon. In fact, the Union had numerous protests after that time at the same location, during which they erected the Rat Balloon. Further, the Court issued an Order in August prohibiting the City from interfering with the Union's right to erect the Rat Balloon. The amendment to the ordinance occurred after that Order.

In addition, Plaintiffs have adequately enforced their post deprivation remedies in this case, namely, this lawsuit. On August 29, 2003, before the City amended the ordinance, this Court issued a temporary restraining order enjoining the Plaintiffs from interfering with the Union's use of the Rat Balloon. On October 27, 2003, this Court granted a preliminary injunction, with the same conditions. In that case, the Court held that the application of the amended ordinance to the Union's use of the Rat Balloon was unconstitutional.

The City appealed that decision, and the Court of Appeals for the Sixth Circuit affirmed the injunction. Thus, the City has been enjoined from taking any steps to interfere with the Union's right to erect the Rat Balloon since August 29, 2003, prior to their Amendment's to 905.03(c).[58] There is simply no evidence to suggest that the City's act of amending its ordinance deprived the Union of any rights.

---

[58] See 905.03, §406 and §4.12 - Fairfield Codified Ordinances.

The Union also claims the City violated its own procedures when amending Section 905.03(c). The Union submits the City was required to follow Fairfield Code Section 4.12, to provide notice and an opportunity to be heard before amending an ordinance. Section 4.12 of the Fairfield City Charter provides as follows:

> By a majority vote of the members of Council, the Council may cause the ordinances and resolutions of the City to be revised, codified, recodified, rearranged, or published in book form, and such action shall become effective immediately upon approval thereof by a majority vote of the members of Council, and may contain new matter therein. The Clerk of Council shall cause a notice of such proposed action by the Council to be published one time in a newspaper of circulation in the City at least seven days prior to Council's action, and no further publication shall be necessary. A current service supplementing the City's codified ordinances and resolutions shall be maintained in the manner prescribed by the Council.

This provision speaks to revisions and codifications of the ordinances **as a whole**. In other words, the Clerk must give notice when the Council takes an action with respect to the entire Code, such as a republication. It does not require notice for every change or revision to a specific ordinance.

The Union also contends the City violated Section 4.06(B)(3) by including emergency language in a zoning ordinance, which the Charter section prohibits. But Section 905.03 is not a zoning ordinance. Rather, it is an ordinance relating to the general police power to enforce restrictions and safety measures on public property.

Thus, the Union's claims that the City violated its own procedures are not valid.

## IV. CONCLUSION.

Based on the above arguments, Defendants respectfully request this Court to grant its Motion for Partial Summary Judgment on the Plaintiffs' claims of selective enforcement, due process violations, and individually liability against Haddix and Matala.

/s/    Wilson G. Weisenfelder, Jr.
Wilson G. Weisenfelder, Jr. (0030179)
James J. Englert (0051217)
Laura I. Hillerich (0075151)
RENDIGS, FRY, KIELY & DENNIS, L.L.P.
One West Fourth Street, Suite 900
Cincinnati, OH  45202-3688
(513) 381-9200
(513) 381-9206 - Facsimile
E-mail: wgw@rendigs.com
            jje@rendigs.com
            lhillerich@rendigs.com

Trial Attorney for Defendants

and

John H. Clemmons (0008870)
Law Director - The City of Fairfield
Thomas A. Dierling (0074438)
530 Wessel Drive, Suite 2A
Fairfield, OH 45014
(513) 863-6700
(513) 863-0031
Co-Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2006, I electronically filed the foregoing Motion for Partial Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

David M. Cook, Esq.
Stephen A. Simon, Esq.
Robert E. Rickey, Esq.
COOK, PORTUNE & LOGOTHETIS
22 West Ninth Street
Cincinnati, OH 45202
**Trial Attorneys for Plaintiffs**


John H. Clemmons, Esq.
   Law Director - The City of Fairfield
Thomas A. Dierling, Esq.
530 Wessel Drive, Suite 2A
Fairfield, OH 45014
**Co-Counsel for Defendants**

I further certify that a copy of the foregoing Motion has been served on the non-CM/ECF participants by first-class U.S. mail, postage prepaid, on this 25th day of August, 2006:

Allison Beck, Esq.
Christopher T. Corson, Esq.
International Association of Machinists and
   Aerospace Workers
9000 Machinists Place
Upper Marlboro, MD 20772
**Co-Counsel for Plaintiffs**


                                              /s/ Wilson G. Weisenfelder, Jr.
                                              Wilson G. Weisenfelder, Jr.