UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION, CINCINNATI

---

LYNN D. TUCKER, Jr., et al.,

    Plaintiffs,

  vs.                               CASE NO.
                                      C-1-03-607

CITY OF FAIRFIELD, et al.,

    Defendants.

---

| | |
|---|---|
| Deposition of: | JANETTE MATALA |
| Taken: | By the Plaintiffs Pursuant to Notice |
| Date: | July 17, 2006 |
| Time: | Commencing at 10:23 a.m. |
| Place: | Cook, Portune & Logothetis<br>22 West Ninth Street<br>Cincinnati, Ohio 45202 |
| Before: | Amy E. Milholland<br>Notary Public - State of Ohio |



```
 1   incorrectly or incompletely, please correct me or
 2   complete the step of the process to the best of your
 3   knowledge, okay?
 4       A.   Okay.
 5       Q.   It appears to be standard practice that
 6   you first discern who the owner of the sign or object
 7   is, either from its location or from telephone
 8   numbers or identity listed on the sign or object?
 9       A.   Correct.
10       Q.   The second thing you do is attempt to
11   communicate with the owner or person or business, who
12   placed the object in the right of way, either by
13   using a phone number listed on the object or sign or
14   by looking for the business that's associated in the
15   immediate vicinity; is that correct?
16       A.   That's correct.
17       Q.   In the communication that you attempt, you
18   attempt to advise the business owner or person, who
19   has placed the object or sign in the right of way,
20   that they're in violation of the city's zoning code;
21   is that correct?
22       A.   Correct.
23       Q.   And you instruct them to remove it?
24       A.   Correct.
25       Q.   Following that, if they don't comply, most
```

```
 1  often, you will call, if you observe it there, or it
 2  continues to be in the right of the way, you then
 3  communicate with them again that they have not
 4  complied and that they have to remove it; is that
 5  correct?
 6       A.   Correct.
 7       Q.   If after one or more verbal
 8  communications, oral communications, the object or
 9  sign remains in the right of way, you then send a
10  certified letter to the business or the person
11  identified, to the extent you've been able to
12  identify them, demanding that it be removed
13  immediately?
14       A.   That's correct.
15       Q.   Is that correct?  Okay.  Now, sometime
16  following the sending of certified letter to the
17  person or business owner or whomever placed an object
18  or a sign in the right of way in violation, as you
19  understand it, of the zoning code, if compliance has
20  still not occurred, you then issue a summons to that
21  person to appear in court?
22            MR. WEISENFELDER:  Objection.  Go ahead.
23       Q.   Is that correct?
24       A.   I write up a summons, and it's sent over
25  to the court.  I do not actually issue the summons
```

© Ace-Merit, LLC  2006 / (513) 241-3200
30 Garfield Place, Suite 620   Cincinnati, Ohio  45202

```
 1  itself.
 2       Q.   When you say it's sent over the the court,
 3  it's sent to the court's clerk or what?  How does
 4  that work?
 5       A.   Yes.  It's taken over to the court clerk,
 6  and in return is given to the police department; and
 7  they hand deliver the court summons.
 8       Q.   Now, does the summons constitute a
 9  citation to court for violation of the zoning code?
10       A.   Yes, it is.
11       Q.   And in your experience when summonses are
12  served, after this process we've just walked through,
13  they're served by a police officer, who delivers it
14  in person?
15       A.   Correct.
16       Q.   Is that police officer usually just one
17  officer, just one person?
18       A.   I have no idea.
19       Q.   Have you ever observed a summons for a
20  zoning code violation being served?
21       A.   No, I have not.
22       Q.   You were not present on July 31st, 2003
23  when officer Fleener (phonetic) wrote the citation to
24  Mr. Tucker, were you?
25       A.   No, I was not.
```

1  Q.  And that was on July 1st?
2  A.  That's correct.
3  Q.  So the only times that you have been
4  involved in, now 18 years of service with the city of
5  Fairfield that the police have actually come to
6  enforce the zoning code immediately, are the two
7  instances involving the machinist demonstration in
8  front of Fairfield Ford on July 1st, 2003 and July
9  31st, 2003?
10  A.  I was only present for the first one on
11  July 1st.
12  Q.  And that's the only time, in your 18 years
13  experience, that the police have actually arrived on
14  the scene to enforce a zoning code violation, or
15  alleged zoning code violation?
16  MR. WEISENFELDER:  While she was there?
17  MR. COOK:  Correct.
18  A.  Yes.
19  Q.  Would you be aware of any others that have
20  occurred?
21  A.  I had the police at another business that
22  assisted me at a location at a business on Route 4.
23  Q.  For a zoning code sign or object
24  violation?
25  A.  Yes, it was.

1  Fairfield Ford, but you did not identify an
2  individual from Fairfield Ford with whom you had
3  contact; do you recall the name of that person?
4      A.   No, I do not.
5      Q.   If I suggested it were Dan Johnson, would
6  that refresh your recollection?
7      A.   I'm not sure.
8      Q.   Searching your memory today, do you have a
9  clear memory of the communication with Fairfield Ford
10 on either July 1st or July 31st, or both, 2003?
11     A.   Yes, I do.
12     Q.   And searching your recollection today,
13 could you please state for the record exactly the
14 conversation you had with a representative from
15 Fairfield Ford starting with July 1st, 2003, please?
16     A.   What I recall is that I received a call
17 towards the end of the day stating that the rat was
18 put up.  And it was in the city's right of way, and
19 it was causing visibility and traffic, obstructing
20 traffic coming down Route 4.  And I told them I would
21 be out to inspect it.
22     Q.   If I may interrupt for just a moment.
23 It's your recollection that the caller stated that
24 there were visibility and traffic interruptions,
25 correct?

Q. And so it was located in that grassy area between the edge of Fairfield Ford's property and the gravel berm?

A. Yes, it was.

Q. Did you observe any traffic accidents occurring while you were present?

A. No.

Q. And approximately how many demonstrators were present at the time?

A. I don't recall exactly how many. There were quite a bit of people there.

Q. At what point on July 1st, 2003 did you determine you required assistance of the Fairfield police department?

A. I tried to talk to the demonstrators and ask them who was in charge of the demonstration and who put the balloon up, or the rat up, and I got no response from anybody.

Q. And that led you to do what?

A. To call the police for assistance.

Q. Do you have a clear memory in recollection of your communication with the police department at that time on that date?

A. I used my cell phone at the site.

Q. So the answer's yes, you do?

```
 1   I talked to people.  I told them I called for the
 2   police department, and that's all I can remember.
 3   BY MR. COOK:
 4       Q.   I want to make sure we're absolutely
 5   clear.  You did not call the police at the suggestion
 6   or insistence of a representative of Fairfield Ford?
 7       A.   That is correct.
 8       Q.   Why did you deem it necessary to report to
 9   the Fairfield Ford persons, or representatives, that
10   you had called the police?
11       A.   Because I was getting no cooperation from
12   any of the union reps that were there or the
13   picketers.  I felt that they were, like, mocking you
14   because they were not cooperating with you, and it
15   was my first time to the site.  I had a city vehicle
16   and I had city identification, and there was still no
17   cooperation.
18       Q.   I think, Miss Matala, you misunderstood my
19   question.  You just told me why you thought it was
20   necessary to call the police.  My question was, why
21   did you think it was necessary to report your action
22   of calling the police to someone from Fairfield Ford?
23   Why did they need to know that?
24       A.   The call initially came to my office from
25   Fairfield Ford, so it just made common sense to me
```

© Ace-Merit, LLC  2006 / (513) 241-3200
30 Garfield Place, Suite 620   Cincinnati, Ohio  45202